NOT DESIGNATED FOR PUBLICATION

No. 124,239

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

LORENZO PULLIAM,
*Appellant*,

v.

STATE OF KANSAS,
*Appellee*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; MICHAEL A. RUSSELL, judge. Opinion filed July 29, 2022. Affirmed.

*Lorenzo Pulliam*, appellant pro se.

*Kayla Roehler*, assistant district attorney, *Mark A. Dupree Sr*., district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before HURST, P.J., BRUNS and GARDNER, JJ.

PER CURIAM: Lorenzo Pulliam appeals the Wyandotte County District Court's denial of his motion for habeas corpus relief under K.S.A. 60-1507. Pulliam alleges multiple errors prejudiced his criminal trial. Because Pulliam's substantive claims involve trial errors that were either raised or could have been raised in his direct appeal, he must establish that ineffective assistance of trial or appellate counsel warrants consideration of the claims in this collateral proceeding. Based on our review of the record on appeal, we find that the claims asserted by Pulliam in his K.S.A. 60-1507 motion fail. Either he cannot establish objectively deficient representation because the underlying substantive

1

issue lacks merit or because he cannot establish a reasonable probability that the result of his trial would have been different had the representation not been deficient. Thus, we affirm.

FACTS

On August 23, 2012, Pulliam was involved in a shooting that resulted in the death of one person and injury to another. The material facts of the shooting are related in the Kansas Supreme Court's decision in Pulliam's direct criminal appeal, and they do not need repeating here. See *State v. Pulliam*, 308 Kan. 1354, 1355-56, 430 P.3d 39 (2018) (*Pulliam I*). Based on its view of the evidence, the State charged him with attempted first-degree murder, second-degree murder, and criminal possession of a firearm. Following a five-day jury trial in June 2013, a jury convicted Pulliam of attempted voluntary manslaughter—a lesser included offense of attempted first-degree murder—second-degree murder, and criminal possession of a firearm.

After the jury reached its verdict, Pulliam's trial counsel moved for a new trial. Before the motion was heard, trial counsel withdrew from the case and the district court appointed another attorney, Michael Highland, to represent Pulliam. Highland also filed a motion for new trial. In this motion, Pulliam challenged the effectiveness of his trial counsel and alleged that the convictions were not supported by sufficient evidence. With respect to the claim of ineffective assistance of trial counsel, Highland alleged that Pulliam's trial attorney failed to challenge a juror who was purportedly observed to be sleeping during the trial. He also alleged that his attorney failed to object to impermissible prosecutorial comments during closing arguments.

The district court held an evidentiary hearing to consider the motions. After considering the evidence as well as the arguments presented, the district court denied both motions for new trial. The district court also denied a motion for a sentencing

2

departure filed by Pulliam. Ultimately, the district court sentenced him to a controlling prison term of 246 months to be followed by 36 months of postrelease supervision.

In his direct appeal, Pulliam asserted:

"(1) the district court denied him the right to present his defense by limiting the testimony of his expert witness; (2) the district court erred in not instructing the jury on involuntary manslaughter as a lesser included offense; (3) the prosecutor engaged in misconduct that deprived him of the right to a fair trial; (4) the district court erred by denying his motion for new trial on the basis of ineffective assistance of trial counsel; and (5) the district court violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution, as described in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000), when it used his criminal history as a factor in determining his sentence without a jury finding that it was true beyond a reasonable doubt." *State v. Pulliam*, No. 113,493, 2016 WL 6651243, at *1 (Kan. App. 2016) (unpublished opinion), *aff'd by Pulliam I*, 308 Kan. 1354, 430 P.3d 39 (2018).

In affirming Pulliam's convictions, the panel noted that it generally did not consider ineffective assistance of trial counsel claims in a direct criminal appeal. But, because the district court had appointed new counsel to represent him and the district court held an evidentiary hearing to consider the issue, the panel determined that it could properly consider his claims in the direct appeal. At that point, Pulliam's claims of ineffective assistance of trial counsel were limited to his attorney's failure to challenge the juror who was allegedly sleeping and failing to object to improper prosecutorial comments during closing arguments. 2016 WL 6651243, at *9. After considering the arguments, the panel concluded that Pulliam's trial counsel was not ineffective. 2016 WL 6651243, at *10.

The Kansas Supreme Court granted review of the panel's decision only on the issue of whether the district court erred in failing to instruct the jury on imperfect self-defense involuntary manslaughter as a lesser-included offense of second-degree murder.

3

In this regard, our Supreme Court found that Pulliam did not establish clear error. *Pulliam I*, 308 Kan. at 1370. Accordingly, Pulliam's convictions were affirmed.

Subsequently, Pulliam filed a timely motion for habeas corpus relief under K.S.A. 60-1507. He again alleged ineffective assistance of trial counsel and asserted that appellate counsel was ineffective. Specifically, Pulliam claimed: (1) the district court lacked subject matter jurisdiction because of a defective charging instrument; (2) the district court prevented defense counsel from questioning one of the alleged victims, Zachary Eisdorfer, about immunity in exchange for his testimony; (3) trial counsel provided ineffective assistance by failing to challenge the complaint, failing to challenge the jury instructions, failing to present evidence of a prior altercation between Pulliam and Eisdorfer, and failing to introduce exculpatory evidence; (4) the prosecutor committed misconduct in jury selection and in closing arguments; and (5) insufficient evidence was presented by the State to support his convictions.

The district court appointed yet another attorney to represent Pulliam on his K.S.A. 60-1507 motion. After several delays in the proceedings, the motion was heard by the district court on May 13, 2021. At the hearing, Pulliam chose to represent himself. At the hearing, both parties presented arguments but represented to the district court that there was no need for an evidentiary hearing. After taking the issue under advisement, the district court denied Pulliam's 60-1507 motion in a written decision entered on July 13, 2021. Thereafter, Pulliam filed a timely notice of appeal and has again chosen to represent himself.

ANALYSIS

The sole issue presented on appeal is whether the district court erred in denying Pulliam's K.S.A. 60-1507 motion. In pursuing a K.S.A. 60-1507 motion, the movant—in this case Pulliam—bears the initial burden of alleging a colorable claim warranting relief

4

and of alleging specific facts to support the claims asserted. Mere conclusory contentions are insufficient to support a K.S.A. 60-1507 motion. *Grossman v. State*, 300 Kan. 1058, 1062, 337 P.3d 687 (2014).

Here, it is undisputed that Pulliam represented to the district court that an evidentiary hearing on his K.S.A. 60-1507 motion was unnecessary. Moreover, although the district court appointed counsel to represent him, Pulliam chose to proceed pro se. Where the district court resolves a K.S.A. 60-1507 motion without hearing new evidence, we exercise plenary or de novo review. See *Grossman*, 300 Kan. at 1061. Thus, we will review the record on appeal to determine the merits—or lack thereof—of the claims asserted by Pulliam in his K.S.A. 60-1507 motion.

Generally, a K.S.A. 60-1507 motion is not intended to be used as a substitute for a direct appeal to correct trial errors. An exception to this general rule authorizes consideration of a claim that may have been asserted in a direct appeal if the issue implicates constitutional rights and exceptional circumstances excuse the failure to raise the issue on direct appeal. Kansas Supreme Court Rule 183(c)(3) (2022 Kan. S. Ct. R. 242). The right to competent counsel in criminal proceedings is protected by the Sixth and Fourteenth Amendments to the United States Constitution. See *Khalil-Alsalaami v. State*, 313 Kan. 472, 484-85, 486 P.3d 1216 (2021). A claim of ineffective assistance of counsel may also be sufficient to establish the requisite exceptional circumstances to permit appellate consideration of the issue. See *Trotter v. State*, 288 Kan. 112, 127, 200 P.3d 1236 (2009). Here, we find that there are exceptional circumstances as to the claim of ineffective assistance of appellate counsel because Pulliam was unable to challenge the representation provided by his appellate attorney until the direct appeal was over.

To establish a claim of ineffective assistance of counsel, the movant must establish that counsel provided objectively deficient representation. The movant must also establish that the deficient representation prejudiced the legal proceedings—whether

5

those proceedings involved a criminal trial or an appeal. See *Strickland v. Washington*, 466 U.S. 668, 688, 692, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); see also *State v. Dinkel*, 314 Kan. 146, 148, 495 P.3d 402 (2021) (trial counsel); *Khalil-Alsalaami*, 313 Kan. at 526 (appellate counsel). Pulliam bears the burden of establishing both parts of the *Strickland* test. See *Mundy v. State*, 307 Kan. 280, 296, 408 P.3d 965 (2018).

As the State points out, Pulliam previously asserted the issue of ineffective assistance of trial counsel in his motion for new trial and on direct appeal. Moreover, he has not shown why he could have not raised all his allegations of ineffective assistance of trial counsel in his motion for a new trial or on direct appeal. However, as indicated above, Pulliam could not have raised his allegations of ineffective assistance of appellate counsel until after his direct appeal had concluded. In particular, it would have been impossible for Pulliam to establish prejudice from the alleged deficiencies by appellate counsel until he knew the outcome of his direct appeal. Accordingly, we will consider the claims asserted in Pulliam's K.S.A. 60-1507 motion through the lens of ineffective assistance of appellate counsel.

In doing so, we must keep in mind that judicial review of legal representation provided by attorneys to their clients is highly deferential. In other words, we are not to review an attorney's effectiveness based on the distorting effects of hindsight. Rather, we must assess an attorney's performance from counsel's perspective at the time the professional services were rendered. As a result, to establish deficient representation, a movant must overcome a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689; *Dinkel*, 314 Kan. at 148 (citing *Fuller v. State*, 303 Kan. 478, 488, 363 P.3d 373 [2015]). Likewise, the movant bears the burden of establishing that counsel's decisions were not motivated by a viable trial strategy. *State v. Gleason*, 277 Kan. 624, 644, 88 P.3d 218 (2004).

If a movant can overcome this presumption and establish that counsel's representation was objectively deficient, the movant must also establish that counsel's deficient performance was prejudicial. To establish prejudice, the movant must demonstrate a reasonable probability that without the deficient performance the outcome of the proceeding would have been different. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Khalil-Alsalaami*, 313 Kan. at 486 (quoting *Edgar v. State*, 294 Kan. 828, 838, 283 P.3d 152 [2012]). Accordingly, we will review each of Pulliam's claims under these standards.

*Allegation of Defective Charging Document*

Pulliam argues that the district court lacked subject matter jurisdiction over the charge of attempted first-degree murder and charge of second-degree murder because the charging document was allegedly defective. The existence of subject matter jurisdiction is a question of law subject to plenary appellate review. *Via Christi Hospitals Wichita v. Kan-Pak*, 310 Kan. 883, 889, 451 P.3d 459 (2019). Furthermore, subject matter jurisdiction may be raised at any time. *Baker v. Hayden*, 313 Kan. 667, 673, 490 P.3d 1164 (2021).

At the outset, we note that a fundamental problem with Pulliam's argument is that defects in charging documents do not deprive the district court of its subject matter jurisdiction as a matter of law. *State v. Dunn*, 304 Kan. 773, 815-16, 375 P.3d 332 (2016). As our Supreme Court has found, it is the Kansas Constitution and applicable statutes that provide a court with subject matter jurisdiction. 304 Kan. at 811. The Kansas Constitution makes clear that "district courts shall have such jurisdiction in their respective districts as may be provided by law." Kan. Const. art. 3, § 6(b). In turn, K.S.A. 22-2601 provides that a district court possesses jurisdiction to try all cases of felony and other criminal cases arising under Kansas statutes. Accordingly, a district court lacks subject matter jurisdiction only if a criminal case has been brought in the wrong type of

7

court or the crime occurred outside the court's territorial jurisdiction. See *Dunn*, 304 Kan. at 816.

Here, Pulliam does not allege either of these circumstances. Instead, he merely suggests that the charging document filed by the State failed to cite the pertinent statutory subsections for the applicable offenses. Regardless, the State is under no obligation to cite the specific statutory subsections supporting the charges. All that is required is that the State provide a "plain and concise written statement of the essential facts constituting the crime charged, which complaint, information or indictment, drawn in the language of the statute, shall be deemed sufficient." K.S.A. 22-3201(b); *Dunn*, 304 Kan. at 790. A review of the charging document reveals that the State complied with the requirements of K.S.A. 22-3201(b).

Although Pulliam was charged with three crimes, he only challenges the district court's subject matter jurisdiction regarding the charges of attempted first-degree murder and second-degree murder. At the time Pulliam committed these crimes, "attempt" was statutorily defined as "any overt act toward the perpetration of a crime done by a person who intends to commit such crime but fails in the perpetration thereof or is prevented or intercepted in executing such crime." K.S.A. 2012 Supp. 21-5301(a). As such, a charging document for an attempted crime required the State to allege sufficient facts of: (1) an intent to commit a Kansas crime; (2) an overt act in furtherance of that crime; and (3) failure to consummate the crime. PIK Crim. 4th 53.010 (2012 Supp.); *State v. Collins*, 257 Kan. 408, 418, 893 P.2d 217 (1995). Additionally, the charging document was required to allege the county or counties in which the crime occurred. PIK Crim. 4th 53.010.

In this case, the State filed an information that charged Pulliam with attempted first-degree murder in the following manner:

"Jerome A. Gorman, as District Attorney in and for the 29th Judicial District of the State of Kansas, County of Wyandotte, prosecuting for and on behalf of said State, within the 29th Judicial District, County of Wyandotte, and in the name, by the authority and on behalf of the said State of Kansas, now, here, in and to the District Court of the said 29th Judicial District, and State of Kansas, information gives that at said 29th Judicial District, County of Wyandotte, State of Kansas, within the jurisdiction of this Court, on or about August 23rd, 2012, Lorenzo M. Pulliam did unlawfully intentionally and with premeditation, shoot and injure a human being, to-wit: Zachary Eisdorfer, toward the perpetration of the crime of First Degree Murder as defined by K.S.A. 21-5402 with the intent to commit said crime, but failed or was prevented or intercepted in the execution of said crime, in violation of K.S.A. 21-5301. (Attempted First Degree Murder, Severity Level 1, Person Felony)."

Though the information did not use the term "overt act," it expressly identified the act the State was relying upon to support the charge. Specifically, the State alleged that Pulliam attempted to kill Zachary Eisdorfer by shooting and injuring him. The information also alleged that Pulliam did so intentionally and with premeditation. Likewise, the State alleged that the crime was committed in Wyandotte County. Thus, we find no defect in the charging document as to the crime of attempted first-degree murder.

Furthermore, K.S.A. 2021 Supp. 21-5403(a)(1) defines second-degree murder as the intentional killing of a human being. Consistent with this definition, the State charged Pulliam as follows:

"At the County of Wyandotte, State of Kansas, for a further, different and second count Herein; Information reads that on or about August 23rd, 2012, defendant(s) Lorenzo M. Pulliam did unlawfully, feloniously and intentionally, but without premeditation, kill a human being, to-wit: Zachary Burton, in violation of K.S.A. 21-5403. (Second Degree Murder, Severity Level 1, Person Felony).

Again, we find that the information contained the essential facts of the crime. In particular, the State alleged that Pulliam intentionally killed Zachary Burton—without

9

premeditation—in Wyandotte County. Consequently, we find no defect in the charging document as to the crime of second-degree murder.

It is also important to recognize that Pulliam was not convicted of attempted first-degree murder. Instead, the jury convicted him of the lesser included offense of attempted voluntary manslaughter. In Kansas, a lesser included offense is statutorily defined to encompass—among other things—an attempt to commit a lesser degree of the charged offense. K.S.A. 2021 Supp. 21-5109(b)(1) and (b)(4). "This imperfect self-defense of voluntary manslaughter is not a true defense; it does not absolve a defendant of criminal liability. It is, rather, a lesser degree of the crime of homicide." *State v. Carter*, 284 Kan. 312, 326, 160 P.3d 457 (2007). Hence, we find that the district court properly submitted the lesser included offense of attempted voluntary manslaughter to the jury for consideration.

In summary, we conclude that the district court had subject matter jurisdiction in this case and that the charging document was not defective. Because the challenged offenses were not defectively charged, Pulliam cannot establish ineffective assistance of counsel for failing to raise this issue in the motion for new trial or on direct appeal. See *State v. Reynolds*, No. 113,565, 2016 WL 3128761, at *7 (Kan. App. 2016) (unpublished opinion), *rev. denied* 306 Kan. 1328 (2017) ("When a party bases an ineffective assistance of counsel claim on counsel's failure to make a meritless legal argument, denial of that claim is appropriate since the attorney acts reasonably in not raising a futile argument to the court and in not informing his or her client of it. Therefore, no deficient performance was shown, as the district court held.").

*Prior Inconsistent Statements by Zachary Eisdorfer*

Pulliam next argues that that the district court prevented trial counsel from introducing prior inconsistent statements allegedly made by one of the victims—Zachary

Eisdorfer—to impeach his trial testimony. It is apparent from the record that counsel did attempt to impeach Eisdorfer's testimony with these prior inconsistent statements. So, we will treat this argument as a claim that Pulliam's appellate counsel provided deficient representation by failing to raise this issue in the direct appeal.

The record reflects that during cross-examination, Pulliam's trial counsel questioned Eisdorfer about several alleged prior inconsistent statements. Defense counsel elicited that Eisdorfer had told detectives that Pulliam fired two shots but had testified on direct examination that three shots had been fired. He also elicited that Eisdorfer told the detectives that he was hit immediately but had testified at trial that he was hit as he started running. In addition, when Eisdorfer testified that he did not recall telling detectives that he reached into a safe to retrieve his gun after the shots were fired, trial counsel showed him his prior statement. At that point, Eisdorfer admitted that he had indeed told detectives that he retrieved his gun after hearing the shots.

It is unclear what evidence Pulliam believes the district court should have admitted or what else he expected trial counsel to ask. Since Eisdorfer admitted his prior inconsistent statements made to detectives when confronted by trial counsel, there would have been no reason to offer copies of the statements into evidence. Significantly, the jury heard the inconsistencies in the accounts given by Eisdorfer and was able to weigh his testimony accordingly. Moreover, when a witness admits to a contradictory statement after being confronted at trial, extrinsic evidence is normally not admissible. See *State v. Schlicher*, 230 Kan. 482, 493, 639 P.2d 467 (1982).

We also note that at a motions hearing before trial, Pulliam's attorney sought access to the terms of any plea agreement entered into by Eisdorfer and the State in an unrelated case. Trial counsel desired this information in an attempt to determine if the State had offered Eisdorfer leniency in exchange for his testimony at the trial in this case. The district court found that the State had an affirmative duty to disclose any agreement it

11

may have with a material witness. In response, the prosecutor stated that there was no agreement between the State and Eisdorfer regarding his testimony in this case.

At trial, Pulliam's attorney questioned Eisdorfer outside the presence of the jury to determine whether he was under the impression the State had offered him leniency in the other case in exchange for his testimony in this case. Consistent with the prosecutor's earlier representation, Eisdorfer denied that he had been promised anything in exchange for his testimony. Based on the State's prior assertion and on Eisdorfer's testimony, the district court precluded trial counsel from questioning Eisdorfer about the alleged agreement in the presence of the jury.

To the extent Pulliam believes that the district court erred in making this evidentiary ruling or that his appellate counsel should have raised the issue in his direct appeal, we find his belief is misplaced. There is nothing in Pulliam's K.S.A. 60-1507 motion or in the record on appeal to show that Eisdorfer was offered an immunity deal or leniency by the State in exchange for his testimony in this case. Without at least some evidence to support the existence of such an agreement, Pulliam cannot establish that the district court erred by not allowing trial counsel to question Eisdorfer about a hypothetical agreement in front of the jury. Accordingly, even if appellate counsel had raised this issue in Pulliam's direct appeal, it would have been futile under the circumstances presented.

*Additional Claims of Ineffective Assistance of Counsel*

In addition, Pulliam argues that both trial counsel and appellate counsel in his direct appeal provided deficient representation in several ways: (1) failure to challenge the district court's subject matter jurisdiction based on a defective charging instrument; (2) failure to request a lesser included instruction for involuntary manslaughter; (3) failure to present evidence of a prior altercation between Pulliam and Eisdorfer regarding

12

Eisdorfer's gun; and (4) failure to introduce exculpatory evidence in the form of mental health diagnoses.

### 1. Failure to Challenge Charging Instrument.

As discussed above, Pulliam cannot establish deficient representation of either trial or appellate counsel for failing to object to the charging document. A review of the charging document reveals that it was not deficient. See *Reynolds*, 2016 WL 3128761, at *7.

### 2. Involuntary Manslaughter Instruction.

Pulliam frames this claim as a conflict of interest because his attorney failed to vigorously argue for an involuntary manslaughter instruction at trial. Although his attorney requested such an instruction, he candidly admitted to the district court that the giving of such an instruction would be a stretch under the facts of this case. However, at the evidentiary hearing on Pulliam's motion for new trial, his attorney testified that he believed the lesser included offense instruction was supported by the evidence.

The right to effective assistance of counsel encompasses the right to representation free from conflicts of interest. *Sola-Morales v. State*, 300 Kan. 875, 883, 335 P.3d 1162 (2014). The type of alleged conflict dictates the burden of persuasion a criminal defendant must carry to obtain relief. Here, Pulliam has not identified any of the types of conflict identified in *Sola-Morales*, 300 Kan. at 884 (citing *Mickens v. Taylor*, 535 U.S. 162, 174, 122 S. Ct. 1237, 152 L. Ed. 2d 291, *reh. denied* 535 U.S. 1074 [2002]).

A review of the record reveals that Pulliam's trial counsel did request a lesser included instruction on involuntary manslaughter but recognized that the facts did not strongly support the instruction. Of course, it is the district court that has the

13

responsibility to instruct the jury on the law and it denied the request for an involuntary manslaughter instruction. After further reflection, trial counsel testified at the hearing on the motion for new trial that he believed in hindsight that the facts would have supported the instruction because an argument could be made that Pulliam never intended to kill.

Because trial counsel had requested the instruction, appellate counsel could have possibly argued on direct appeal that the district court erred. Appellate counsel instead made the decision to focus on imperfect self-defense involuntary manslaughter. However, Pulliam does not argue that appellate counsel provided deficient representation in failing to pursue this theory on direct appeal. As a result, even if trial counsel's representation was deficient in its advocacy for the lesser included offense instruction, Pulliam cannot demonstrate how that deficiency prejudiced him when appellate counsel chose not to argue the issue in his direct appeal.

In theory, one could speculate that the district court may have possibly been swayed had trial counsel offered an impassioned argument in support of the instruction. But to establish prejudice, Pulliam must show a reasonable *probability* that the result of his trial would have been different absent counsel's deficient performance. *Khalil-Alsalaami*, 313 Kan. at 486. We find that he has failed to establish such a probability in this case.

### 3. Evidence of Prior Altercation with Eisdorfer

Pulliam's third claim of ineffective assistance of counsel challenges trial counsel's failure to present evidence of a prior altercation he had with Eisdorfer. Pulliam's argument is difficult to decipher, and his brief does not clearly articulate what additional evidence he believes his trial counsel should have presented regarding his prior altercation with Eisdorfer that was not presented at trial. Regardless, because the record reveals that the jury heard testimony regarding the prior altercation between Pulliam and

14

Eisdorfer, we find that he cannot establish prejudice even if he could establish that trial counsel's performance was somehow deficient.

A review of the record reveals that trial counsel elicited testimony from Eisdorfer's mother that her son had had an argument with Pulliam a few weeks before the shooting. She also testified that Pulliam had stayed away from Eisdorfer's residence for the next week or so. Although trial counsel attempted to characterize the incident as a fight, Eisdorfer's mother testified that it was an argument.

Later, the prosecutor asked Eisdorfer about whether he had previously fought with Pulliam. Eisdorfer denied that he and Pulliam had fought but admitted that they had argued. Eisdorfer testified that Pulliam did not want him to take his gun out around him. Likewise, on cross-examination, Eisdorfer testified that Pulliam was uncomfortable, paranoid, and apprehensive when he had pulled out his gun in front of him.

We find that additional evidence that the argument was actually a fight would have had little—if any—effect on the outcome of the jury trial. As discussed previously, it is undisputed that Pulliam intentionally shot Eisdorfer. Moreover, the jury heard about the argument or altercation and also heard about Pulliam being uneasy around guns. After considering the evidence presented at trial, the jury concluded that Pulliam believed he needed to defend himself but that his belief was not justified. Thus, because Pulliam does not explain how additional evidence about his prior argument or altercation with Eisdorfer would have changed the jury's evaluation of the shooting, we conclude that he has failed to establish that either trial counsel or appellate counsel was ineffective.

*4. Mental Health Diagnoses.*

Next, Pulliam claims that his trial counsel was ineffective by failing to introduce additional evidence of his mental health issues. Because Pulliam did not seek to introduce

15

evidence in support of his K.S.A. 60-1507 motion, we find no evidentiary support in the record on appeal for this allegation. As indicated above, we are not to presume that an attorney's representation of a defendant was deficient. To the contrary, Pulliam bears the burden of overcoming a presumption by coming forward with evidence to support his claim that his trial counsel rendered ineffective representation. See *Strickland*, 466 U.S. at 689; *Dinkel*, 314 Kan. at 148. However, he has failed to do so.

Even if we were willing to assume for the sake of argument that trial counsel was ineffective, Pulliam cannot establish prejudice because he has presented no medical records, expert testimony, or other evidence regarding his ability to form the intent necessary to commit the crimes of which he was convicted. See *State v. Pennington*, 281 Kan. 426, 438, 132 P.3d 902 (2006). As a result, we find that Pulliam has not met his burden to establish that trial counsel was ineffective or that such ineffectiveness prevented him from receiving a fair trial.

*Allegations of Prosecutorial Error*

Pulliam also claims alleged prosecutorial error during voir dire and during closing arguments. We note that Pulliam raised a claim of prosecutorial error in his direct criminal appeal. *Pulliam I*, 2016 WL 6651243, at *1. Likewise, he has not explained why he could not have asserted his additional allegations of prosecutorial error in his motion for new trial or in his direct appeal.

In his direct appeal, the panel found as follows:

> "Pulliam next contends that during argument at the close of trial, the prosecutor made statements that denied him his constitutional right to a fair trial. He presents four statements that he claims crossed the line into impropriety. Two of those involved the prosecutor emphasizing to the jurors how important it was for them to use their common sense and experience. The first of those two was in the principal segment of her

16

argument, expressed as a general reference to the standard instruction telling jurors they 'have a right to use common knowledge and experience in regard to the matter about which a witness has testified.' PIK Crim.4th 51.060. The second statement was in the prosecutor's rebuttal argument when she asked the jury to use common sense and experience in evaluating Pulliam's statements and actions.

"The other two statements were directed to Pulliam's self-defense claim, and he again asserts they were outside the broad scope given to prosecutors for discussion of the evidence in argument. The prosecutor suggested that in assessing the reasonableness of Pulliam's claim, the jurors needed to decide what a reasonable person would do, 'and a reasonable person is you, ladies and gentlemen.' The prosecutor also told the jury: 'And a reasonable person is you making that decision. You are reasonable people, and [a] reasonable person is a person off the street.' Pulliam characterizes these statements as 'golden rule' arguments, inviting the jurors to put themselves in Pulliam's position.

"Pulliam also argues that the prosecutor's statements amounted to a misstatement of the law on self-defense. The trial court instructed the jurors that '[r]easonable belief requires both a belief by defendant and the existence of facts that would persuade a reasonable person to that belief.' PIK Crim.4th 52.200. Pulliam asserts that by suggesting jurors should consider themselves to be reasonable people, the prosecutor altered the legal standard for a reasonable person by replacing a generalized, nonspecific 'person' with the juror's own personal views." *Pulliam I*, 2016 WL 6651243, at \*7.

Now, Pulliam alleges that the prosecutor also committed error during voir dire by discussing facts that were allegedly never introduced at trial and during closing arguments by allegedly inflaming the passions and prejudices of the jury. We note that both of these alleged errors were preserved by objections from trial counsel. Hence, the only way this issue could be properly before us is if we interpret Pulliam's challenge as a failure of appellate counsel to raise them in his direct appeal.

Because Pulliam's trial was held prior to the Kansas Supreme Court issuing its opinion in *State v. Sherman*, 305 Kan. 88, 109-11, 378 P.3d 1060 (2016), we will analyze

17

his arguments using the pre-*Sherman* standard. See *Brown v. State*, 58 Kan. App. 2d 808, 832, 475 P.3d 689 (2020). The standard for what was called "prosecutorial misconduct" prior to *Sherman*, involved two steps. First, a reviewing court would determine whether the challenged conduct exceeded the wide latitude afforded prosecutors in presenting their cases to a jury. Second, if the reviewing court found error or misconduct, it would then consider whether the error or misconduct resulted in prejudice to the defendant's right to a fair trial. *State v. Pribble*, 304 Kan. 824, 831-32, 375 P.3d 966 (2016). In the second step of the analysis, the reviewing court would consider whether the error was gross and flagrant; whether the error showed ill will on the prosecutor's part; and whether the evidence was of such a direct and overwhelming nature that the misconduct would have had little weight on the jury deliberations. 304 Kan. at 833.

*1. Jury Selection Comments.*

During voir dire, the prosecutor briefly stated a synopsis of what she anticipated the evidence would show. Specifically, the prosecutor stated:

> "[W]e're not allowed to go too much into the evidence right now, but I can just give you a general encapsulation that is—that the State believes that, as we said, on August 23rd of 2012, the defendant shot Zachary Burton at close range through the eye, and Burton was unarmed. And that the defendant then shot Zach Eisdorfer."

Pulliam contends that this "general encapsulation" constituted prosecutorial error because it involved facts not in evidence. But Pulliam does not identify which facts in the synopsis he is challenging. Furthermore, it is not error for a district court to allow an overview of the evidence to be presented to the panel of potential jurors. See *State v. McDonald*, No. 98,000, 2008 WL 2424533, at *3 (Kan. App.) (unpublished opinion), *rev. denied* 287 Kan. 768 (2008).

18

Additionally, a review of the record reveals that trial counsel objected to the State's comment that Pulliam shot Burton in the eye and that Burton was unarmed because these facts were purportedly disputed. The district court sustained the objection and told the prosecutor to keep her comments about what the evidence would show general in nature. Regardless, Pulliam does not appear to challenge the prosecutor's comments on this basis.

Significantly, the facts recited by the prosecutor in voir dire were ultimately supported by the evidence presented at trial. As we have stated, the State presented evidence that Pulliam shot Burton intentionally when he was unarmed. There is also evidence in the record to suggest that Burton was shot in the eye. Because the prosecutor's comments during voir dire were eventually supported by evidence, we do not find that she committed error or misconduct. Likewise, we find that even if the comments were improper, Pulliam cannot establish prejudice because the jury was properly instructed that the statements of counsel were not evidence and regarding the State's burden of proof.

We also find that the prosecutor's comments during voir dire would not have provided a basis to overturn Pulliam's convictions even if this issue had been raised on direct appeal. See *Miller v. Mullin*, 354 F.3d 1288, 1298 (10th Cir. 2004) ("[I]f the issue is meritless, its omission will not constitute deficient performance."); *Littlejohn v. State*, 29 Kan. App. 2d 506, 508, 28 P.3d 448 (2001) ("We see no reason why appellate counsel should be required to raise and brief issues . . . which are totally without merit on appeal."). Accordingly, we do not find that appellate counsel was ineffective for failing to raise this issue.

19

*2. Closing Arguments.*

Pulliam also claims that the prosecutor's closing arguments were erroneous and inflamed the passions of the jury. He also suggests that the prosecutor's arguments diverted the attention of the jury from its duty to decide the case on the evidence presented during trial and on the law. Based on our review of the record on appeal, we do not find that the prosecutor committed reversable error.

Regarding the issue of motive, the prosecutor argued:

"We don't have to prove motive to you in this case. Homicides don't make sense. Most of them are senseless. They rarely do. We don't have to prove motive. And remember in jury selection when we we're talking about things—and I used that example of possession of cocaine, and things that you might be thinking about. And one of them that I said in the example was, 'Well, somebody might say, "Well, I can't convict because I don't know where she got the cocaine."' Well, that's not an element of the crime. And motive is not an element of the crime. We don't have to prove that to you. We don't know why the defendant wanted to kill Zack Eisdorfer. We don't know, but he did."

We do not find this argument to be outside the wide latitude given to prosecutors in arguing to the jury. Rather, the argument attempts to explain a potential weakness in the State's case. Because Pulliam and Eisdorfer were friends, the jury might have questioned why he wanted to kill his friend. Although the State was unable to convince the jury, it had charged Pulliam with harboring premeditated intent to kill Eisdorfer. Consequently, we find that it was proper for the State to make this argument to the jury.

Later in her closing argument, the prosecutor reviewed the evidence she believed supported Pulliam's intent to kill. As part of this argument, the prosecutor asserted that Pulliam's conduct after the shooting was evidence of a guilty state of mind. This argument was made in response to Pulliam's claim that he acted in self-defense.

Specifically, the prosecutor argued:

> "But also let's look at the post-offense behavior. Post-offense behavior. Everything was a conscious intentional decision that showed evidence of guilt, of guilty mind. I'm trying to get out of here. I'm trying to hide myself. I'm trying to get money to get out of here. I'm wiping steering wheels to get rid of my finger prints. I'm ditching the gun. I'm ditching the car that I was in. That is evidence of guilt, ladies and gentlemen, and you can use that in your determination. That is not evidence of somebody who is acting in self-defense. It's not. He knew what he was doing. He did it on purpose. You cannot look at which story and decide."

We find that it was reasonable for the prosecutor to suggest that Pulliam's conduct after he shot the victims may reflect that his intent was to kill. See *People v. Lasko*, 23 Cal. 4th 101, 112, 999 P.2d 666, 96 Cal. Rptr. 2d 441 (2000) ("[D]efendant's actions *after* striking the fatal blow were not those of an unintentional killer: he did not call an ambulance, he tried to obscure evidence of the killing by dragging Fitzpatrick's body to the bathroom and by trying to wipe up the blood on the floor, and he tried to leave the house with $1,800 of Fitzpatrick's money."). The mere fact that there may be other reasonable inferences drawn from the evidence does not preclude the State from arguing an inference favorable to its position. See *State v. Logsdon*, 304 Kan. 3, 25, 371 P.3d 836 (2016) ("Circumstantial evidence, in order to be sufficient, 'need not rise to that degree of certainty which will exclude any and every other reasonable conclusion.'").

Moreover, even if the argument had been improper, Pulliam has not established prejudice. The record reflects that the jury found that Pulliam acted in self-defense in shooting Eisdorfer, even though it believed his actions were not objectively warranted. In other words, by convicting Pulliam of attempted voluntary manslaughter, the jury found that Pulliam believed he was acting in self-defense but that this belief just was unreasonable. As such, the jury ultimately rejected the prosecutor's argument regarding the significance of Pulliam's actions following the shooting.

21

During closing argument, the prosecutor also attempted to explain the inconsistencies between some of the statements Eisdorfer made to the police and his testimony at trial. In doing so, the prosecutor asked the jury to consider the stress that Eisdorfer was under after being shot. She argued: "Again, there's no accounting for where everybody is in this case by Zach Eisdorfer's testimony. Think about that again. He's under the stress of the situation, and he has been shot in the chest."

We do not find this argument to be improper based on the circumstances presented. Here, the prosecutor was asking the jury to draw reasonable inferences from the evidence. Certainly, a reasonable person could infer that someone who has been shot may not accurately remember the details in his or her attempt to escape the peril. At trial, there was evidence presented to establish that Eisdorfer ran out of the room after Pulliam shot him. As such, the State was entitled to argue to the jurors that Eisdorfer might not be able to recall the events with crystalline detail under these conditions.

Finally, the prosecutor argued: "This is not a case of self-defense. You cannot believe that it's a case of self-defense because even if the defendant reasonably believe[s] there's no reasonable person—and a reasonable person is you, ladies and gentleman."

Although this argument was not artfully made, we do not find it to fall outside the wide latitude given to prosecutors in arguing to a jury. Likewise, when viewed in the context of the closing arguments as a whole, the comment was fleeting, and it is unlikely that it would have influenced the jury's evaluation of the evidence during deliberations. As such, Pulliam has not established prejudice. Therefore, we conclude that appellate counsel did not provide deficient representation by failing to raise these allegations of prosecutorial error or misconduct on direct appeal.

22

*Sufficiency of the Evidence*

Although characterized as a sufficiency-of-the-evidence claim, Pulliam's last argument is simply a rehash of his previous argument regarding the alleged defect in the charging document. As we discussed at length above, this argument has no merit. First, the district court had subject matter jurisdiction in this case. Second, the information complied with the statutory requirements. Furthermore, to the extent Pulliam is challenging the representation provided by appellate counsel in his direct appeal for failing to challenge the sufficiency of the evidence, this argument also fails.

In reviewing a challenge to the sufficiency of the evidence supporting a criminal conviction, we examine the evidence in the light most favorable to the State to determine whether a rational factfinder could conclude the defendant's guilt beyond a reasonable doubt. *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021). Once again, we reiterate that it was undisputed at trial that Pulliam intentionally shot both Eisdorfer and Burton. In doing so, he severely injured Eisdorfer and he killed Burton. The only disputed issue involved Pulliam's intent and whether the shootings were justified as self-defense. A record reflects that the State presented sufficient circumstantial evidence to support the jury's verdict. Accordingly, appellate counsel did not provide deficient representation by failing to raise the issue of sufficiency of the evidence on direct appeal.

Affirmed.